Curia, per

JohnstoN, Ch.
The interest of the principal question involved in this appeal, is heightened by the consideration that it is, now, presented for the first time, for adjudication in this State.
It has been said, that the English statute of distributions was founded, in a good measure, upon the custom of London, the analogies of which have been freely and beneficially resorted to, as aids, in its construction. In the interpretation of our own statute of 1791, our Courts have hitherto derived much assistance from the adjudications upon the English statute, to which it bears a general analogy, though, occasionally, differing from it in phraseology, and in some of its substantial provisions. But, upon the point now submitted to us, though we may look, with advantage, to the English decisions and authorities, we are free, the matter being res inte-gra, to follow such of them, only, as appear most conform *188 able to sound general principles, and to harmonize best with the terms of our own Act; — which, after all, is the true and only subject of construction.
Vide McCaw v. Elewit, 2 McCord’s Ch. Rep. 91.
3 Eden, 180.
The third section of this celebrated statute provides that “nothing herein contained shall be construed to give to any child*** of the intestate, a share of his *** estate, where such child *** shall have been advanced by the intestate, in his lifetime, by portion or portions equal to the share which shall be allotted to the other children. But, in case any child, *** who shall have been so advanced, shall not have received a portion equal to the share which shall be due to the other children, (the value of which portion being estimated at the death of the ancestor, but so that neither the improvement of the real estate, by such child, **'* nor the increase of the personal property, shall be taken into the computation;) then, so much of the estate of the intestate shall be distributed to such child*** as shall make the estate of all the children to be equal.”
The first impression produced by the terms which I have just recited, is, that the advancements contemplated by them, and required to be brought into hotch pot, must possess something of a tangible character, — or the qualities oí property, to such an extent, at least, that their value may be measured by the common standards of value, applicable to the estate left by the intestate, and without resorting to speculation or conjecture. These advancements are spoken of as “ portions,” and as “recti estate,” and 11 personal property,” susceptible of “ improvement” and “ increase,” which physical additions, apart from the inhibitions of the statute, might have been “ taken into the computation”
It will be found, 1 think, that any other construction would be unsafe, unreasonable, inconvenient, if not impracticable, and contrary to the current of decisions on the English Statutes and the custom of London.
It is a very current fallacy, hardly worth noticing, — that the statute of ’91 was intended to effect what is nowhere avowed on its face, as coming within the design of its framers; to wit, that it was intended to equalise the distributees, by deducting, from the share of each child, the expenses to which his parent may have been put on his account. To say nothing of the endless investigations and intolerable litigation to which this must necessarily have led, nothing could be more repugnant to justice. Should the misfortunes of the sickly or feeble child be aggravated by reducing his portion below that of his more robust brother? or should the infant, incapacitated from contracting with any other person, be charged by its own father to the same extent as if it were able to contract, and as if the expenditures made for it were made upon the legal discretion of the child, and not of the parent 1 “If,” as was said, with a somewhat different view, in Wy *189 cherly v. Wycherly, “ I could charge my son with his schooling, his education at the University, and the expenses of veiling, <fec. it would be to say the son might contract debts with his father, at a time when he could contract with no other person.”
McCaw v. Blewit.
Whatever sums may be expended for a child, must, if chargeable at all, be charged either as a debt or as an advancement. As a debt, they cannot be charged, unless the child was, at the time, capable of contracting. Nor can the expenditure, as an expenditure, rank as an advancement.
It is not the sum expended, but the thing which is bought with it, — the thing received by the child, — which constitutes the advancement; nor is the cost of the purchase the measure of the value of the thing advanced. The rule of the statute is that the advancement is to be estimated, not at what it cost, nor even at its value when given by the parent, but according to its value at the párent’s death. No matter whether the negro which a' father bestows on his son, cost him much or little ; it is the value of such a negro at the father’s death which is to be charged to the son. So here, if the education of young May, general or professional, is to be considered an advancement, its value is to be estimated by its intrinsic worth, and not by the money expended in procuring it. Such is the imperative direction of the statute ; and I am at a loss for any rule by which a money valuation can be placed upon the mental proficiency resulting from education, whether of the one kind or the other.
The utter absurdity of making the expenses of education the standard of the value of the education itself, may be^easily demonstrated. Suppose the same sum expended upon two children of manifestly unequal capacity; will each of them have received an equal benefit ? It is equally easy to shew the gross injustice of charging indiscriminately even a professional education as an advancement to the child upon whom it has been bestowed. Suppose a misjudging father, for the gratification of his pride, or from any other motive, compels his son to undergo the studies preparatory to a profession or an art, for which, upon attempting its duties, he proves utterly unfitted; shall he, in addition to the loss of his time, and the indiscribable mortification arising from his position, be saddled with the expense of bringing him into it?
There can be no such principle as that the mental accomplishments with which a child is furnished for the duties of life are to be considered in the light of advancements. And there can be no distinction between a general or a professional education, in this respect. Whatever instruction, whether of the one kind or the other, is given, the object is equally to advance the child in life. And, indeed, when we consider the superiority of moral over merely intellectual training, *190 aS ^urn^ure ^01’ duties, and to a successful and happy and acceptable career in life, why shall not the one be regarded an estate as.well as the other? — And then we shall have tne task of instituting a comparison in every case between the moral advantages afforded to the respective children, and of putting a money value upon them. Why should we adopt a principle leading to such consequences, and attended with such difficulties ?
Morris v. Burroughs.
3P. Wms.317.
Toller’s Law of Ex’rs. book 3d, ch.6.
Mich. 1693.
I have said that any construction which should include, within the definition of an advancement, things intangible, or not possessed of the qualities of property, or unsusceptable of valuation by ordinary standards, — would be not only unreasonable and inconvenient, but unsupported by the current of decisions upon analogous subjects.
This appears by the authorities quoted in the decree. the exception of the dictum of Lord Hardwicke, refer-red to by the Chancellor, there is nothing to countenance such a construction. It is expressly said in the rule to Pusey v. Desbouvrie, which was a case upon the custom of London, “ Maintenance money, or an allowance made by a freeman to his son at the university, or in travelling, &c. is not to be ta-^en. as any Part °f his advancement, this being only his education : — and it would create change and uncertainty to en-quire minutely into such matters. So putting out a child apprentice, is no part of his advancement, for it is only procuring the master to keep him for seven years, instead of the parent. Hender v. Rose, at the Rolls, Trin. 1718.”
In the same note it is said, “ the father’s buying an office for the son, though but at will, as a gentleman-pensioner’s place, or a commission in the army, — these are advancements, pro tanto.” Norton v. Norton, by Lords Commissioners Rollinson and Hutchins.
This comes up to my idea of an advancement. The office purchased is property, and having been bought may be sold again, and, therefore, has a marketable money value.
The same observation applies to the remark of Lord Henley in Wycherly v. Wycherly, that, “whenever a father purchases an office, or any thing else, for his son, it shall always be considered an advancement.”
In Edwards v. Freeman, a contingent portion was secured by the father, by marriage articles, to the daughter; and it was held to be an advancement. This was property capable of valuation. But with regard to £80 maintenance money, the Lord Chancellor says, “ this is not to be brought into hotch pot, no more than what is allowed or secured by the par rent for the education of the child.”
And so of all the cases and authorities, with the exception of the dictum already noticed.
There is another consideration. It is included in the very *191 idea of an advancement, that it is the privilege of the child to stick to it, or bring it into hotch pot; of which doctrine Lord Chancellor King speaks in Edwards v. Freeman, where having held the portion of the daughter to be an advancement, he says, “ it can be no injustice to the child, because it is left to the election of the child thus advanced, whether she collate or not. If the child be contented with what she has received, she may keep it.” This power of restitution clearly does not belong to an education. However the child may be dissatisfied with it or the value which may be set upon it in the distribution, he cannot restore it to the estate. It would seem to follow that it cannot be an advancement.
2 Murph. 133 cited arguendó in 2 McC. Ch. 100.
See l Strob. Youngbloodv. Norton,
3 Strob. Eq.
2 Atk. 160.
Upon the whole, I am satisfied that the professional education of John May, jr. should not have been charged against him in the distribution, any more than his general education.
It is not necessary to determine upon the sufficiency of evidence excepted to in one of the grounds of appeal. I think, however, that, according to Sheppard v. Sheppard and Young v. Lorick, the memorandum of the father was good evidence of the fact stated in it. But the fact stated was not sufficient to constitute an advancement. If it had been, according to the same cases, the estimate of the father would not have fixed the ’‘'alue of the advancement. That must be governed by the rule laid down in the statute. In a case where it might be doubtful whether the thing given was intended as an advancement, or not, as in Murrell v. Murrell, where the question was whether a tract of land was given to the son as an advancement from the father,"or in compensation for his son’s services, I think the father’s declaration is good evidence as to the intention. But there is no necessity to give an opinion on this point here.*
*192 It is ordered that the decree be modified, and that the expenses of the education of John May, jr. as well professional as general, be disallowed asan advancement.
Dunkin and Caldwell, CC. concurred.
Dargan, Ch. absent at the hearing.

Decree modified.

Note by Johnston, Ch. It would seem that the declaration of an intestate may be evidence, as between, or against, distributees, who take as volunteers, under him; and that it should be allowed all the effect which, by the law of the case, it can be admitted to have. Such declaration was, according to the case of Youngblood v. Norton, incompetent to change the valuation of the advancement, though, perhaps, competent to prove the fact of advancement, if an advancement could be predicated of the transaction. By an order passed in Youngblood v. Norton, it was directed that stipulations or agreements between the distributee and the intestate, as to the value of the advancements, should be excluded. No such evidence having been afterwards offered, the correctness of this direction was not involved in the appeal in that case. If it had, it may be doubted whether it could have been sustained. Though the declaration of the father alone should have had no effect as to the value of the advancement, it might have been otherwise as to an agreement between the father and a distributee of full age, competent to contract Lord Hardwicke said, in Heron v. Heron, “the custom of *192 London has laid a restriction as to a freeman’s personal estate, that the orphanage part shall go in equal shares, among the children ; and he cannot deprive them of it. This has produced certain rules in this Court, which have long prevailed, to prevent any evasion of the custom by the father.” But agreements for advancing the children, in marriage, or putting them out in the world, by way of trade, will be supported, as effectuating the intention of the custom.